**Alfredo GONZALEZ, Petitioner–Appellant,**

v.

**George DeTELLA, Warden, Respondent–Appellee.**

No. 96–1707.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1997.

Decided Oct. 14, 1997.

Frederick F. Cohn (argued), Chicago, IL, for Petitioner–Appellant.

Margaret M. O'Connell (argued), Office of the Attorney General, Chicago, IL, for Respondent–Appellee.

Before COFFEY, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Serving a sentence of natural life imprisonment for murder, Alfredo Gonzalez sought a writ of habeas corpus under 28 U.S.C. § 2254. Pictures at his trial showed two men dead on the sidewalk, riddled by bullets. A drug deal had gone awry. Four members of the Latin Kings street gang were at or near the scene. Justino Cruz, one of the four, pleaded guilty to murder and in exchange for a 22–year sentence testified that Jose Maysonet provided the gun and drove the car, while Cruz, Gonzalez, and Chris Hernandez pulled up the hoods of their sweatshirts and left the car. Cruz asserted that he kept watch while Gonzalez and Hernandez first negotiated with, and then killed, the other drug dealers. After shooting at least four bullets, Gonzalez ran back to Cruz and said: "Let's get out of here. We just shot two guys." The quartet fled and dispersed. Corroboration came from Rosa Bello, who testified that Gonzalez, Cruz, and Hernandez came to the apartment she shared with Maysonet. At Maysonet's request, Bello gave a package to Gonzalez, who opened it, revealing a gun, which he loaded and placed in the pouch of his sweatshirt. The men departed; Maysonet returned, alone, after the murders. Bello also related that the Friday before the trial someone tried to kill her by running her down with a car.

Gonzalez testified the other three offered him a ride home while he was walking on the street at midnight, then stopped on the way and committed the murders while he sat in the car, unaware until the last minute what was about to happen. He concedes that when his companions pulled up their hoods, he knew that a crime was in prospect and did nothing to prevent it. According to Gonzalez, the Latin Kings signify an impending murder by wearing their "hoodies," which his companions did that night. (A member since 1977, Gonzalez was acquainted with the gang's rituals.) Gonzalez allows that he learned of the slayings as soon as the other gang members returned to the car, yet never told the police. On his own testimony, Gonzalez was guilty of misprison of felony, but he was not charged with that crime. The jury believed Cruz and Bello over Gonzalez, however, and convicted him of murder. Although the state's appellate court concluded that the photographs should not have been admitted, it deemed the error harmless and affirmed. People v. Gonzalez, 265 Ill.App.3d 315, 202 Ill.Dec. 399, 637 N.E.2d 1135 (1st

Dist.1994). The district court then denied Gonzalez's petition for collateral relief. *Gonzalez v. DeTella*, 918 F.Supp. 1214 (N.D.Ill. 1996).

■■■ The petition was filed before April 24, 1996, so the Antiterrorism and Effective Death Penalty Act does not affect our analysis. *Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). But both before and after the new law, collateral relief under § 2254 has been available only when the custody violates the Constitution, treaties, or laws of the United States. Errors of state law, such as the improper admission of evidence, do not support a writ of habeas corpus. *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Watkins v. Meloy*, 95 F.3d 4 (7th Cir.1996). Gonzalez's principal claim—that the grisly pictures of the dead drug dealers, which included depictions of genitalia pierced by bullets, should not have been admitted into evidence—depends more on Illinois law than on the Constitution of the United States. Evidence wrongly admitted does not support a writ of habeas corpus unless all things considered the trial posed an unacceptably great risk of convicting an innocent person, and the judicial process therefore denied the accused due process of law. The district court held that Illinois gave Gonzalez a forum in which guilt could be separated from innocence, and that the erroneous evidentiary rulings therefore did not support collateral relief. As we remarked in Watkins, "when the state ... fails to limit the prosecution's evidence, the only constitutional principle to which a defendant can appeal is a catch-all sense of due process, and the appeal almost always fails. If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission." 95 F.3d at 6–7 (citations omitted). *Gomez v. Ahitow*, 29 F.3d 1128, 1139–40 (7th Cir.1994), accordingly holds that the admission of "gruesome" photos of the decedent in a murder case does not justify collateral relief, even when the evidence is cumulative and likely designed more to inflame the jury than to supply an essential underpinning of the prosecution's case.

■■ Photographs of the decedent's body are relevant. They tend to show that the crime charged by the indictment took place. Graphic depictions of multiple bullet wounds also may be relevant: they can (and here did) support the prosecution's other evidence about how the crime occurred. Cruz testified that Gonzalez emptied a clip of ammunition into the drug dealers; the photographs corroborated this testimony by showing multiple bullet wounds in the victims' bodies. Although these facts were adduced in a more sedate fashion through the testimony of a pathologist, no rule of law, and certainly no rule of *constitutional* law, limits the prosecutor to one piece of evidence in support of each element of the offense. This is so even when the element is uncontested—indeed, even when the defendant offers to admit the element (as Gonzalez did not). See *Old Chief v. United States*, —— U.S. ——, —— — ——, 117 S.Ct. 644, 653–54, 136 L.Ed.2d 574 (1997). The Court recognized in *Old Chief* that limiting the proofs to clinically abstract propositions may prevent the jurors from acquiring an accurate picture of events, and that disappointing their expectations about what evidence would normally be available to establish a proposition may lead them to draw inaccurate inferences about what actually happened (based on conjectures about why evidence is being hidden from their view).

Relevant evidence may have a potential to mislead a jury. That is why Fed.R.Evid. 403 and its parallels in state practice permit a court to exclude evidence whose probative force is outweighed by a potential for reaching a decision on an inappropriate basis. Gonzalez believes that the photographs posed this risk. His lawyer tells us that the photographs would have imbued the jury with a desire to ensure that *someone* pays for the awful crime—and the jurors' wrath would fall on the person in the dock, the only one available to convict. That is conceivable, we suppose, but the whole point of a trial, with its ceremonial trappings and the formal presentation of evidence, is to dispel the jurors' instinct to reprehend the crime without ensuring that it has identified the criminal. The judge tells the jurors that their solemn

obligation is to determine whether the *defendant* committed the crime, not to determine whether murder is bad, or whether this murder was especially heinous. With the acquiescence of a complaisant judge, a prosecutor might undermine the process by arguing that the jury should "send a message" about the evils of crime, without regard to the defendant's own culpability, but nothing of the kind occurred in Gonzalez's trial. Moreover, this jury knew that someone would pay for these murders even if Gonzalez did not: Cruz already had pleaded guilty, and for all the jury knew Hernandez and Maysonet were next in line for trial. Weaknesses in the state's case—Cruz was trying to minimize his own role while gaining a reward for fingering Gonzalez, and Bello may have been trying to deflect blame from her lover Maysonet—were known to the jury. Weaknesses in Gonzalez's defense also were apparent: what was the likelihood that he would just happen to be walking alone at midnight, be offered a ride by fellow gang members on their way to a murder (recall that according to Gonzalez they pulled up their hoodies before leaving the car, signifying that the killing was premeditated), and sit placidly in the car while the others committed the crime? The risk that the gravity of the evil would overwhelm the jurors' capacity to determine personal responsibility was lower here than in many a case where the evidence is less vivid, and there is only one suspect.

Most of Gonzalez's remaining contentions were forfeited, because they were not presented to the state courts in the way required by state law. Inexplicably, the Attorney General of Illinois has ignored this deficiency. But our puzzlement at indifference by state officials to the requirements of state law (and the corresponding limitation on the role of the federal courts) does not prevent us from agreeing with the district court's conclusion that none of the events Gonzalez now protests transgressed against constitutional limitations. Elaboration is not necessary.

AFFIRMED.