Armen J. SYLVESTER, Petitioner–
Appellant,

v.

Craig HANKS, Respondent–Appellee.

No. 97–2499.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 19, 1998.
Decided March 30, 1998.

Armen J. Sylvester, Wabash Valley Correctional Institute, Carlisle, IN, for Petitioner–Appellant.

Bridget L. Field, Office of the Atty. Gen., Criminal Appeals Division, Chicago, IL, for Respondent–Appellee.

Before FAIRCHILD, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Armen Sylvester, imprisoned in Indiana following his conviction for attempted murder, was charged with conspiring to incite a riot. A hearing officer concluded that Sylvester was the "Baye" to whom a letter referred and ordered Sylvester to spend the next three years in disciplinary segregation. Sylvester concedes that the "Baye" mentioned in the letter conspired to incite a riot but denies that he is that "Baye"; others in the prison used the same nickname, he asserts. The district court denied Sylvester's petition for habeas corpus, see 28 U.S.C. § 2254, and we issued a certificate of appealability identifying a single issue: "whether the prison conduct adjustment board had some evidence to sustain its finding against the petitioner."

■ We confess to some doubt that this case should proceed under § 2254. Sylvester does not seek earlier release from custody. See *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (§ 2254 is proper device by which to seek restoration of good-time credits lost in a disciplinary board's decision). Instead he contends that his custody should take one form (the prison's general population) rather than another (segregation). Section 2254 is the appropriate remedy only when the prisoner attacks the fact or duration of "custody." Although dramatically more restrictive confinement may be contested in a collateral attack under § 2254, see *Graham v. Broglin*, 922 F.2d 379 (7th Cir.1991), recent cases such as *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), imply that the difference between a prison's general population and segregation does not implicate a "liberty" interest—and therefore could not be "custody" for purposes of § 2254. See also *Wagner v. Hanks*, 128 F.3d 1173 (7th Cir.1997). The difference between § 1983 and § 2254 is potentially important for procedural issues, such as the need for a certificate of appealability and the application of the Prison Litigation Reform Act. See *Newlin v. Helman*, 123 F.3d 429, 437–38 (7th Cir.1997); *Moore v. Pemberton*, 110 F.3d 22 (7th Cir.1997). Perhaps *Stone–Bey v. Barnes*, 120 F.3d 718 (7th Cir.1997), which extends *Edwards v. Balisok*, —— U.S. ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), and *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), to foreclose the use of § 1983 actions to review placement in segregation means that prisoners are effectively compelled to use § 2254—though *Stone–Bey* did not attempt to reconcile its holding with *Sandin* and the fact that few states afford collateral review of prison disciplinary decisions. Cf. *Spencer v. Kemna*, —— U.S. ——, —— - ——, —— n. 8, 118 S.Ct. 978, 988–90, 992 n. 8, 140 L.Ed.2d 43 (1998) (Souter, J., concurring, Ginsburg, J., concurring, and Stevens, J., dissenting, forming a majority that would treat *Heck* as inapplicable when collateral review is impossible). At all events, because Sylvester styled this as a collateral attack under § 2254 and has not argued that the concomitant restrictions under the Antiterrorism and Effective Death Penalty Act do not apply, and the state has not argued for application of the PLRA, we do not pursue the matter. Nor do we explore the possibility that, even if this is properly a § 2254 action, a certificate of appealability is unnecessary because "the detention complained of [does not] arise[ ] out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A).

■ The question identified in the certificate of appealability is whether "some evidence" supports the prison's decision. The "some evidence" standard comes from *Superintendent of Walpole v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), a case in which the prison deprived an inmate of good-time credits and thus extended the duration of his custody. The holding reflected the gravity of the sanction; it is far from clear that federal courts are supposed to scrutinize the record of prison disciplinary proceedings that end in lesser penalties. But because the state has not made anything of this difference (other than through its argument that segregation does not involve a loss of "liberty") we do not decide how far *Hill* extends. For it is clear, as the district court held, that "some" evidence supports the

decision. There is the letter depicting "Baye" as one of the schemers, the fact that Sylvester is known as "Baye", and a link between the two: while being transported from one prison to another, Sylvester was overheard "discussing 'putting on a demonstration to show how things were'". All three pieces of evidence were before the hearing officer. Sylvester argues that the third, linking bit of evidence does not count, because he was also charged with threatening the lives of 10 guards during the same episode, and the officer found the evidence of that charge insufficient. According to Sylvester, this means that nothing overheard during the van ride can be considered. This is balderdash. The conduct report attributes the demonstration remark to Sylvester personally and the threats to "some of [the] offenders" in the van. One guard who was present submitted a statement that Sylvester had not threatened to kill anyone. A rational decisionmaker could conclude that Sylvester was planning a riot but did not threaten to kill 10 guards. All *Hill* requires is "some" evidence, and the record satisfies that standard.

Although we limited the certificate of appealability to a single issue, Sylvester ignored that decision and proceeded to brief four additional issues. The state did not respond to any of the four, and properly so. Unless the parties may confine attention to the questions in the certificate of appealability, specification serves no function. Although the court is free to amend a certificate of appealability to add issues, if we took such a step we would extend the appellee an opportunity to file a supplemental brief. One of the additional issues that Sylvester presents has potential merit, so we discuss it briefly, but the question is not close enough to call for a response from the state. The other issues have no potential merit and will not be discussed.

Sylvester contends that the prison disciplinary process violated the due process clause, as interpreted in *Forbes v. Trigg*, 976 F.2d 308 (7th Cir.1992), because the prison did not give reasons for failing to ensure that two inmate witnesses be requested to furnish testimony. See also *Ponte v. Real*, 471 U.S. 491, 498, 105 S.Ct. 2192, 2196–97, 85 L.Ed.2d 553 (1985). These other prisoners were approached but declined to give written statements, and the prison neither followed up by requiring them to appear in person nor gave reasons for this inaction. Sylvester contends that the prison thus violated the due process clause, as interpreted in *Forbes*.

■ Both *Ponte* and *Forbes* dealt with deprivations of good-time credits. When the sanction is less onerous, the Constitution requires less, for how much process is due depends on the weight of the interest at stake. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Gilbert v. Homar*, — U.S. —, — – —, 117 S.Ct. 1807, 1812–13, 138 L.Ed.2d 120 (1997). The foundational case on the subject of prison disciplinary hearings is *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which likewise concerns good-time credits. After concluding that good-time credits are an interest protected by the due process clause, *id.* at 555–58, 94 S.Ct. at 2974–76, the Court took up the question "what process is due?" with the recognition that good-time credits determine how long someone remains in a state's custody. The gravity of this interest led the Court to require substantial protections—but not *as* substantial as those it required in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), for the revocation of parole, because parole decisions generally affect more liberty than do decisions about good-time credits. 418 U.S. at 559–62, 94 S.Ct. at 2976–78. Sylvester's case is still farther from *Morrissey*, because it does not involve the length of confinement but deals exclusively with the type of confinement within a prison. If despite *Sandin* this interest qualifies as a form of "liberty", it is of a lesser weight, and prison officials therefore need not use all of the procedures required by *Wolff* when reaching decisions.

■ *Forbes* concludes that the qualified right to present witnesses recognized in *Wolff* entails a right to have the assistance of the prison in requiring even unwilling persons to give evidence—a form of compulsory process—unless the prison has a good reason why the persons need not testify. Whatever

else may be said about the process required in the wake of *Sandin* before a prisoner may be moved to segregation, we do not think that the Supreme Court would today require prisons to compel unwilling witnesses to give testimony (oral or written) at hearings that concern only a prisoner's custody status, and not the length of his confinement. A prisoner is entitled to some kind of hearing, but an opportunity to present his own testimony, documentary evidence, and the testimony of *willing* witnesses is constitutionally sufficient for interests of this kind (if, to repeat, any process at all is due). We therefore do not enlarge the certificate of appealability to include the additional questions Sylvester seeks to present.

Affirmed.