Richard CARR, Plaintiff–Appellant,

v.

Michael O'LEARY and Michael P. Lane, Defendants–Appellees.

No. 96–3885.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1998.

Decided Feb. 4, 1999.

John G. Jacobs (argued), Joshua Karsh, Kevin B. Marsh, Plotkin & Jacobs, Chicago, IL, for Plaintiff–Appellant.

Erik G. Light, Asst. Atty. Gen. (argued), Chicago, IL, Susan F. Rhodes (on the brief), Attorney Registration & Disciplinary Commission, Illinois Supreme Court, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and COFFEY and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

A middle-aged inmate of the minimum security unit (the "honor farm") of Illinois' prison at Stateville with only 96 days left before he was due to be released, Richard Carr had the misfortune to be caught in a prison riot. Prisoners angered by a lockdown following the murder of a guard took over the second floor, the residential floor, of Carr's unit and told the other prisoners that anyone who went downstairs for the required morning count would have his head split open. The rioters were young, tough gang members, and none of the inmates in the second floor of the minimum security unit attempted to defy them. Carr was not a gang member, and he had had nothing to do either with the murder (which had occurred in the maximum security unit of the prison) or with the takeover of his floor. And because the guards had locked the door of the only exit from the second floor to the first (where the count was conducted) to prevent the riot from spilling over to the first floor, he could not have gotten downstairs even if he had run the gauntlet of the gang members guarding the exit from the inside. Later in the morning, moreover, when a guard opened the door to the second floor to take a look around inside, Carr asked him what he should do and the guard told him to go back to his room and wait. Eventually the guards took over the second floor and hustled all 85 of its occupants over to the maximum security unit.

At disciplinary hearings held shortly after the incident, every resident of the second floor who had missed the count, hostage and gang member alike, was found guilty of the infraction of missing the count and received identical punishments, which included the loss of six months of good-time credits. After exhausting his administrative remedies, Carr filed suit under 42 U.S.C. § 1983 against the prison's warden and the director of the state prison system, seeking damages for what he contends was a deprivation of his liberty without due process of law. That was in 1989, and in 1995 the district court granted partial summary judgment for Carr, resolving the issue of liability in his favor and reserving the determination of damages for a trial. Before the trial could be held, this court ruled in *Miller v. Indiana Department of Corrections*, 75 F.3d 330 (7th Cir.1996), that the principle of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), applies to prison disciplinary proceedings, so that a suit for damages that challenges the validity of a prisoner's punishment may not be maintained until and unless the prisoner has gotten the punishment set aside, which Carr had not done. The state moved to dismiss Carr's suit on the basis of *Miller*, the holding of which has since been confirmed by the Supreme Court. See *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). The district court granted the state's motion, precipitating this appeal.

■ This case was seven years old, and, more to the point, *Heck* was almost two years old and summary judgment on liability had been granted for the plaintiff, when the state woke up and sought dismissal on the authority of *Miller*. Carr's court-appointed lawyers had been working on this case, with little prospect of substantial remuneration, since 1990. Naturally they cried "waiver." The district judge in her opinion granting the motion to dismiss did not discuss the issue of waiver, although she may have been alluding to it when she said that Carr's original complaint, filed pro se, may not have alerted the state to the full scope of his contentions. That may be. But it is unrelated to the issue of waiver. It was clear from the start that one of Carr's claims (others have fallen by the wayside) was a denial of due process, and it was clear when *Heck* was decided by the Supreme Court that a possible, and indeed rather obvious, defense in a case such as this

is that the principle of *Heck* applies to disciplinary proceedings.

 The ruling granting partial summary judgment in favor of Carr was the law of the case. The district judge therefore could not change it without a good reason. *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic,* 152 F.3d 588, 591 (7th Cir.1998). In light of *Miller* it was apparent that Carr did not have a meritorious case, and that was obviously a good reason for the district judge's changing her previous ruling. *Agostini v. Felton,* 521 U.S. 203, ——, 117 S.Ct. 1997, 2017, 138 L.Ed.2d 391 (1997). But a party's unreasonable delay in advancing a good ground for a change in a previous ruling is normally a compelling ground for deeming even a good ground waived. *United States v. Connell,* 6 F.3d 27, 31 (1st Cir.1993); cf. *Crocker v. Piedmont Aviation, Inc.,* 49 F.3d 735, 739 (D.C.Cir. 1995); *United States v. Palmer,* 122 F.3d 215, 220–21 (5th Cir.1997). Thus, even when the leeways built into the law of the case doctrine would allow a district judge to change her prior ruling if the party urging the change had preserved the ground for the change, if he has not done so the judge may be barred by the party's waiver. The doctrine of waiver would have little bite otherwise. Suppose a defendant fails to plead the statute of limitations in timely fashion and as a result the district judge holds that the suit is not time-barred; for normally the failure to plead a defense in timely fashion is a waiver. E.g., *Sharpe v. Jefferson Distributing Co.,* 148 F.3d 676, 679–80 (7th Cir.1998); *Herremans v. Carrera Designs, Inc.,* 157 F.3d 1118, 1122 (7th Cir.1998); *Anderson v. Flexel, Inc.,* 47 F.3d 243, 247 (7th Cir.1995); *Harris v. Secretary, U.S. Dept. of Veterans Affairs,* 126 F.3d 339, 343 (D.C.Cir.1997); cf. *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944). Later the defendant discovers the statute of limitations and urges the district judge to change her ruling, pointing out that under the law of the case doctrine a ruling can be changed if shown to be erroneous. If the judge were free to accept this argument, it would be tantamount to ignoring waiver.

The State of Illinois had been remarkably careless in failing to assert a *Heck* defense until *Miller* was decided, since *Miller* was such a natural extension or application of *Heck* and to a matter central to the state attorney general's responsibilities, hence a matter on which his office could be expected to be *au courant*; the state's argument in its brief in the present case that the decision in *Miller* was unforeseeable is frivolous. Cf. *Bousley v. United States,* 523 U.S. 614, ——, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998). By its delay the state imposed unnecessary expenses on Carr's lawyers and on the state's taxpayers who pay the salaries of the attorney general and his staff, and an unnecessary burden on the federal courts. Worse still, the state courted disaster by waiving a dispositive defense—a familiar failing of the Illinois attorney general's office, *Gonzalez v. DeTella,* 127 F.3d 619, 622 (7th Cir.1997); *Emerson v. Gramley,* 91 F.3d 898, 900 (7th Cir.1996); *Holland v. McGinnis,* 963 F.2d 1044, 1057–58 (7th Cir.1992); *Rivera v. Director,* 915 F.2d 280, 283 (7th Cir.1990); *Wilson v. O'Leary,* 895 F.2d 378, 384 (7th Cir. 1990), and one distinctly detrimental to the interests of the people of Illinois.

 It is no answer that there was no waiver because *Miller* had not come down and it was therefore merely likely, not certain, that *Heck* applied to prison disciplinary proceedings. The failure to plead the *Heck* defense in timely fashion was a waiver; the question is whether there was some ground for relieving the defendants from the consequences of their waiver. *U.S. National Bank v. Independent Insurance Agents of America, Inc.,* 508 U.S. 439, 446–48, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993); *Baltimore & Ohio Chicago Terminal R.R. v. Wisconsin Central Ltd.,* 154 F.3d 404, 408–09 (7th Cir.1998); *Amcast Industrial Corp. v. Detrex Corp.,* 2 F.3d 746, 749–50 (7th Cir. 1993); *National Ass'n of Social Workers v. Harwood, supra,* 69 F.3d at 627–29. Failure to plead a defense that had not yet been created, and could not have been foreseen—a critical, and here highly relevant, qualification, as *Bousley v. United States, supra,* 523 U.S. at ——, 118 S.Ct. at 1611, suggests—at the time for pleading defenses would be a good ground for relieving the defendant from

his waiver, or even, as some courts prefer to say, for denying that there had been a waiver. *Oregon Short Line R.R. v. Department of Revenue,* 139 F.3d 1259, 1264–65 (9th Cir. 1998); *Ackerberg v. Johnson,* 892 F.2d 1328, 1331–33 (8th Cir.1989). But this defense, as we have seen, is not available to the state, because *Miller*'s extension of *Heck* to reach the circumstances of the present case was readily foreseeable.

■ The district judge could, nevertheless, have forgiven the state's waiver of its *Heck–Miller* defense in accordance with the principle that treats the waiver of defenses based on grounds rooted in considerations of state sovereignty less harshly than other waivers. See *Granberry v. Greer,* 481 U.S. 129, 134, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Sullivan v. Conway,* 157 F.3d 1092, 1095 (7th Cir.1998), and cases cited there; *Graham v. Johnson,* 94 F.3d 958, 970 (5th Cir.1996) (per curiam); *National Ass'n of Social Workers v. Harwood,* 69 F.3d 622, 628–29 (1st Cir.1995); *Hardiman v. Reynolds,* 971 F.2d 500, 503 (10th Cir.1992). But a discretionary ruling, which such forgiveness would be, cannot be upheld when there is no indication that the judge exercised discretion, *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *PMC Inc. v. Sherwin–Williams Co.,* 151 F.3d 610, 620 (7th Cir.1998), and cases cited there; *Riordan v. Kempiners,* 831 F.2d 690, 697–99 (7th Cir.1987), unless it would have been an abuse of discretion to rule the other way, which, for the reasons we have indicated, it would not have been here. This suggests that our proper course would be to remand the case to enable the district judge to exercise her discretion as to whether to forgive the state's waiver. But in light of a recent Supreme Court dictum, this step is unnecessary. The dictum indicates that in all likelihood *Heck* would not be an obstacle to Carr's suit even if the state had pleaded a *Heck* defense.

A majority of the Justices of the Supreme Court have said that a prisoner who cannot challenge the validity of his conviction (or, what for these purposes is the same thing, a prison disciplinary sanction) by either appeal or postconviction procedure can do so by bringing a civil rights suit for damages under 42 U.S.C. § 1983. *Spencer v. Kemna,* 523 U.S. 1, –––––––––, 118 S.Ct. 978, 988–90, 992 n. 8, 140 L.Ed.2d 43 (1998) (concurring and dissenting opinions); see *Nance v. Vieregge,* 147 F.3d 589, 591 (7th Cir.1998); *Sylvester v. Hanks,* 140 F.3d 713, 714 (7th Cir. 1998); *Cabrera v. City of Huntington Park,* 159 F.3d 374, 380 n. 6 (9th Cir.1998) (per curiam); *Figueroa v. Rivera,* 147 F.3d 77, 81 n. 3 (1st Cir.1998). Because Carr was released from prison after the suit was filed, he could no longer bring a habeas corpus proceeding—his only remaining route for getting his disciplinary sanction reversed. And *Spencer* (not the dictum, but the holding) makes clear that even if he had sought habeas corpus before his release, the release would have mooted the proceeding. With Carr unable to get the disciplinary sanction reversed, five Justices would not consider the sanction a bar to a section 1983 suit even though that suit calls into question the validity of the sanction. The dictum is inconsistent with our decision in *Anderson v. County of Montgomery,* 111 F.3d 494, 499 (7th Cir. 1997), but we need not decide whether a Supreme Court dictum is a sufficient basis for a panel of this court to overrule a previous decision of this court without circulation to the full court under 7th Cir. R. 40(e). Cf. *Mojica v. Gannett Co.,* 986 F.2d 1158 (7th Cir.1993) (en banc) (per curiam); *United States v. Gantzer,* 810 F.2d 349, 353 and n. 1 (2d Cir.1987). The dictum in *Spencer v. Kemna* casts sufficient doubt on the applicability of *Heck* to the present case to make it unreasonable to relieve the defendants from their waiver of *Heck.* The judgment for the defendants must therefore be reversed and the case remanded. Needless to say, we express no view on the ultimate merits of Carr's claim.

■ Two issues concerning sanctions have yet to be addressed. First, in the district court Carr moved for sanctions under Fed. R.Civ.P. 11 with regard to the defendants' having filed affidavits that directly contradicted their earlier, sworn answers to interrogatories. The district judge misunderstood the motion, although it was clearly worded, as a motion for sanctions for filing the affidavits late. So there has been no

ruling on the motion and this is another matter to be taken up on remand. Second, the defendants' brief in this court contains a serious misrepresentation. The brief represents Carr as having testified in the prison disciplinary proceedings that he had missed the count because he was asleep. There is no transcript of those proceedings, but the disciplinary committee's summary of the testimony is consistent with Carr's submission in the disciplinary proceeding that he was asleep "when the count bell rang," that he got up, got dressed, went to the door leading downstairs, and found that it was locked and that inmates were milling around in front of it. The purpose of the count bell is presumably to wake up the prisoners, and so the fact that a prisoner is asleep when the bell rings does not imply that he slept through the count. Anyway it would have been impossible for Carr to show up for the count, because of the riot and the instructions of the guards.

It is difficult to believe that this misrepresentation by the state, which goes to the heart of Carr's case on the merits, is innocent. We shall therefore issue to the attorney general's office a rule to show cause why the authors of the brief should not be sanctioned for unethical advocacy. This is especially needful in light of the repeated criticisms of this office that we have made in other cases. See, e.g., *Acorn v. Edgar*, 99 F.3d 261, 262 (7th Cir.1996); *Cooper v. Casey*, 97 F.3d 914, 918 (7th Cir.1996) ("the problem of inadequate representation of the State of Illinois and its agencies and employees is an old one to which we have frequently drawn attention though as yet without ef-

fect"), and cases cited there; *Anderson v. Romero*, 42 F.3d 1121, 1123 (7th Cir.1994).

REVERSED AND REMANDED.

RIPPLE, Circuit Judge, concurring in the result.

This case can be decided in a straightforward manner. In *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court applied the rule previously announced in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), to judgments in prison disciplinary proceedings. In *Balisok*, the Court considered a state prisoner's § 1983 challenge to the disciplinary proceeding that resulted in the loss of good time credits. It concluded that the prisoner's "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983" and therefore must be brought in habeas. *Id.* at 648.

Most recently, the Court's pronouncements in another case have stated the rule in *Balisok* with more precision and, in so doing, have provided a common-sense ground for decision in the matter now before us. In *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), the Supreme Court considered the habeas petition of a prisoner whose sentence, during the pendency of the litigation, had terminated. In a case challenging the revocation of parole rather than the loss of good time credits, the Supreme Court held that the expiration of the habeas petitioner's sentence caused his petition to be moot because it no longer presented an Article III case or controversy.[1] *See id.* at 983–

---

**1.** The Court noted that, in the past, it had presumed that a wrongful conviction had collateral consequences that continue after the petitioner's sentence had expired and that were adequate to meet Article III's injury-in-fact requirement. In this case, however, the Court declined to presume that collateral consequences resulted from the petitioner's parole revocation, and it concluded that the petitioner demonstrated no such collateral consequences to the revocation of parole. *See Spencer*, 523 U.S. at ——— ———, 118 S.Ct. at 985–87. Although it allowed for the possibility that a § 1983 damages claim might be brought to challenge a procedural defect that did not "necessarily imply the invalidity" of the revocation,

*id.* at ——, 118 S.Ct. at 988 (quoting *Heck*, 512 U.S. at 487, 114 S.Ct. 2364), it concluded that this was not such a case. The Court affirmed the dismissal of the habeas petition as moot. The Supreme Court also commented:

> As for petitioner's concern that law enforcement officials and district judges will repeat with impunity the mootness-producing abuse that he alleges occurred here: We are confident that, as a general matter, district courts will prevent dilatory tactics by the litigants and will not unduly delay their own rulings; and that, where appropriate, corrective mandamus will issue from the courts of appeals.

*Id.*

86. The Court briefly considered *Heck* in relation to the petitioner's claim and concluded that the petitioner still might bring a § 1983 damages claim, without being barred by *Heck*, as long as he sought damages for the respondents' use of the wrong procedures rather than for their reaching the wrong result. *See id.* at 988 (citing *Heck*, 512 U.S. at 482–83, 114 S.Ct. 2364).

Of particular noteworthiness to us, as we review Mr. Carr's case, however, is the fact that the Justices concurring and dissenting in *Spencer* clarified their positions concerning the scope of *Heck*. Justice Souter, joined by Justices O'Connor, Ginsburg and Breyer, stated "that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that would be impossible as a matter of law for him to satisfy." *Id.* at ——, 118 S.Ct. at 990 (Souter, J., concurring). Justice Ginsburg reiterated her agreement in her separate concurrence: "I have come to agree with Justice Souter's reasoning: Individuals without recourse to the habeas statute merely because they are not 'in custody' (people merely fined or whose sentences have been fully served, for example) fit within § 1983's 'broad reach.'" *Id.* (Ginsburg, J., concurring). In addition, Justice Stevens stated in his dissent that, "[g]iven the Court's holding that petitioner does not have a remedy under the habeas statute, it is perfectly clear, as Justice Souter explains, that he may bring an action under § 1983." *Id.* at ——, 118 S.Ct. at 992 (Stevens, J., dissenting).

This pragmatic limitation on the rule of *Balisok* is not new to this court. In two earlier decisions, five members of this court, including a member of the present panel, have noted that, after these dicta pronouncements in *Spencer* concerning the breadth of *Heck*, a majority of the Supreme Court "would treat *Heck* as inapplicable when col-

lateral review is impossible." *Sylvester v. Hanks*, 140 F.3d 713, 714 (7th Cir.1998); see also *Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir.) (noting that five Justices concluded in *Spencer* "that the approach of *Heck* does not govern when other relief is *impossible*"), *cert. denied*, —— U.S. ——, 119 S.Ct. 426, 142 L.Ed.2d 347 (1998) (emphasis in original). Other circuits also have taken this view.[2]

Given the availability of this straightforward basis of decision, I cannot understand the panel majority's reluctance to base our resolution of the case before us on it. Instead, the panel majority elects to ground its holding on a waiver of the general *Balisok* rule by the State of Illinois. It is a fair reading of the record to conclude that the Illinois Attorney General did not pursue the possible extension of *Heck* to prison disciplinary proceedings until the advent of this court's decision in *Miller v. Indiana Department of Corrections*, 75 F.3d 330 (7th Cir. 1996). The district court apparently thought that this approach was, in light of the state of the law, a permissible one, and I see no reason to armchair quarterback the trial court's decision in that regard.

Such an aggressive use of the waiver doctrine against the state with respect to a defense grounded in the state's sovereignity indeed sets a precedent with which this court may have difficulty living. This situation is exacerbated by the reality that, even in this instance, the waiver doctrine is not being applied evenhandedly. A study of the original record in *Miller* reveals that the Indiana Attorney General never suggested the applicability of *Heck* to prison disciplinary proceedings. Yet that officer was not berated for not having defended the interests of Indiana and, moreover, was given the benefit of *Heck* without having asked for it. Indeed, this court compounded the problem by first deciding *Miller* without oral argument by unpublished order despite the fact that it announced a new governing legal principle.

2. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 n. 6 (9th Cir.1998) (per curiam) (noting that, after *Spencer*, "it is questionable whether *Heck*'s holding would command a majority of the Supreme Court today" but that "*Heck* remains good law"); *Figueroa v. Rivera*, 147 F.3d 77, 81 n. 3 (1st Cir.1998) (noting that

dicta from concurring and dissenting opinions in *Spencer* "may cast doubt upon the universality of *Heck*'s 'favorable termination' requirement," but obeying the Court's admonition that lower federal courts follow its directly applicable precedent, even if that precedent appears weakened by later pronouncements).

In sum, I cannot understand the court's reluctance to decide this case in a straight-forward manner. Reliance on waiver, although affording an opportunity to chide another institution of government on how it conducts itself (an area in which federal judges ought to exercise significant restraint), requires that we incur significant institutional costs ourselves. Respect for the discretion of the trial court and evenhandedness in our own decisions are important cornerstones of our work. Today's decision will be a hard one with which to live not only as a matter of precedent but also as a matter of institutional health.