In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 22-2146

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SAMUEL RUBEN CARAWAY,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:16-cr-30024-NJR-9 — **Nancy J. Rosenstengel**, *Chief Judge.*

---

ARGUED FEBRUARY 23, 2023 — DECIDED JULY 18, 2023

---

Before SYKES, *Chief Judge*, and ROVNER and LEE, *Circuit Judges*.

ROVNER, *Circuit Judge*. Samuel Ruben Caraway was a key player in a major cocaine trafficking operation. In 2016, DEA agents arrested eight of the couriers in the operation, all of whom were indicted, and all of whom identified Caraway as the supplier of the cocaine and leader of the operation. By April 2017, the government communicated to Caraway's attorney (who also represented another co-defendant), that

Caraway would soon be indicted. The next month, Caraway voluntarily traveled from his home in Houston, Texas to the Southern District of Illinois to participate in a proffer interview. Due to his cooperation at the time, Caraway was not arrested and was allowed to return to Houston. In September 2017, the government learned that Caraway committed a violent robbery in Houston and notified Caraway's attorney by telephone and email that prosecutors intended to indict him imminently and that he was required to turn himself in to law enforcement no later than December 15, 2017. Caraway never responded. On January 4, 2018, the government charged Caraway with one count of conspiracy to distribute cocaine. The United States Marshals Service began searching for Caraway approximately eleven months later by surveilling the places he had lived and frequented, interviewing family members, and through regular checks of databases for records of commercial transactions. On July 15, 2021, a Texas state trooper stopped Caraway for speeding, and after initially supplying a fake name and denying having identification, Caraway eventually provided his real name and was arrested.

In the face of the superseding indictment, Caraway pleaded guilty, stipulating that he was responsible for distributing between 50 and 150 kilograms of cocaine from August 1, 2014, through December 3, 2015. The probation office's presentence investigation report determined that Caraway was responsible for, very conservatively, another 125 kilograms of cocaine that could be considered as relevant conduct. The presentence investigation report recommended sentencing enhancements for being the leader and organizer of the conspiracy, and most importantly for our purposes, it advised the judge that Caraway's offense level should be enhanced by two points for obstruction of justice, based on the

fact that he had evaded arrest for approximately 42 months following his indictment. The report also recommended a two-level reduction in his offense level for acceptance of responsibility.

The government argued that Caraway should not receive any adjustment for acceptance of responsibility, as he had engaged in willful obstruction of justice by evading arrest. On the flip side of that coin, Caraway objected to the enhancement for obstruction of justice, arguing that the fact that the government could not find him was not evidence that he was evading arrest.

After overruling all of the enhancement objections, the district court properly calculated Caraway's sentence range under the United States Sentencing Guidelines to be 292 to 365 months, noting that had it ruled that Caraway did not obstruct justice by evading arrest, the Guidelines range would have been 235 to 293 months. After discussing the factors required under 18 U.S.C. § 3553, the district court judge noted that she would have imposed the same sentence even if she had erred in her rulings on the objections to the enhancements. She then imposed a sentence of 360 months, explaining that it was the appropriate sentence given the extensive nature of the drug trafficking organization, and anything less would not meet the goals of 18 U.S.C. § 3553.

Caraway appeals only the application of the enhancement for obstruction of justice. Caraway argues that the government had no evidence that he evaded arrest as nothing in the record indicated that he was ever informed by his former lawyer that he was about to be indicted or had to turn himself in, he had not yet appeared in court, he had not fled the Houston area where he had lived all of his life, and he had not changed

his appearance or altered any identification papers. According to Caraway, the government simply had failed to find him, which was not, in and of itself, evidence of a calculated attempt to evade arrest. The government, for its part, argues that Caraway evaded arrest by purposefully cutting off contact with his attorney and family, avoiding the places he would usually visit, and avoiding all credit card and other traceable electronic transactions. The parties also debated whether his provision of fake names to the state trooper who pulled him over for speeding was "panicked, instinctive flight," which does not warrant an evasion enhancement under Seventh Circuit case law, or was part and parcel of his larger calculated evasion. *See United States v. Porter* 145 F.3d 897, 903 (7th Cir. 1998).

We need not decide whether Caraway's action amounted to an obstruction of justice, however, because the district court stated unequivocally that "[t]his would be my sentence even if my rulings on the objections are wrong and the guideline range would be something else." R. 548 at 107. Consequently, "whether or not the enhancement should have applied, the district court's detailed explanation makes a remand pointless." *United States v. Salgado*, 917 F.3d 966, 970 (7th Cir. 2019). Where a district court unambiguously states that it would have imposed the same sentence regardless of any potential error, the error is harmless. *United States v. Tate*, 822 F.3d 370, 377 (7th Cir. 2016). As we explained, district courts can, in essence, "inoculate their sentences against reversal by giving us the information we need to determine, on appeal, whether an error was harmless without resort to a remand." *United States v. Asbury*, 27 F.4th 576, 581 (7th Cir. 2022) (*citing United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009)). Having said that, this Court disfavors conclusory comments

that would have the effect of nullifying the Guidelines with a simple assertion that any error would make no difference to the choice of sentence. *Id.; United States v. Baker*, 56 F.4th 1128, 1132 (7th Cir. 2023) (noting the court's reluctance to treat Guideline errors as harmless when the sentencing judge has offered only a conclusory comment); *United States v. Ingram*, 40 F.4th 791, 796 (7th Cir.), *cert. denied*, 143 S. Ct. 341 (2022) ("[A] bare, boilerplate assertion … will not ordinarily suffice to hold a Guidelines error harmless."). Consequently, in order to be effective, an inoculating statement must meet the following two requirements:

> First, the inoculating statement must be "detailed." *Abbas*, 560 F.3d at 667. By that, we mean that the judge must give specific (though not necessarily lengthy) attention to the contested guideline issue in her explanation. A generic disclaimer of all possible errors will not do. Second, the inoculating statement must explain the "parallel result." *Id.* By that, we mean that it must be "tied to the decisions the court made" and account for why the potential error would not "affect the ultimate outcome." *United States v. Bravo*, 26 F.4th 387, 397 (7th Cir. 2022), *cert. denied sub nom. Luczak v. United States*, No. 21-8190, 2023 WL 4278456 (June 30, 2023).

*Id.* at 581–82. At the same time, a sentencing judge "need not belabor the obvious." *Baker*, 56 F.4th at 1132 (*quoting United States v. Sainz*, 827 F.3d 602, 608 (7th Cir. 2016)).

In this case, the district court judge stated:

> I think anything more than 360 months would
> be greater than necessary. And anything less,
> even if the Court's calculation of the guideline
> range is incorrect, would not meet the sentenc-
> ing goals of 18 United States Code Section 3553.
> So I want to be very clear. This would be my
> sentence even if my rulings on the objections are
> wrong and the guideline range would be some-
> thing else. I believe 360 months on a drug crime
> is the most that I have ever imposed, and that's
> only a time or two. And certainly given the ex-
> tensive nature of this drug trafficking organiza-
> tion, that is appropriate.

R. 548 at 107. Clearly the judge understood that she was im-
posing a long sentence, but she was explicit that she had cal-
culated Caraway's sentence after considering the nature of
the drug trafficking operation as a whole and the sentencing
goals of section 3553. The judge had properly calculated the
"parallel result," just moments earlier, noting that had she up-
held Caraway's enhancement objection, the sentence would
have been 235 to 293 months. R. 548 at 103. Ideally the judge
would have specifically named the contested enhancement in
her inoculating statement, stating, "this would be my sen-
tence even if my ruling *on the obstruction of justice enhancement*
was wrong and the guideline range was *235 to 293 months*."
The district court should then explain, in this specific context,
exactly which § 3553 factors (or other considerations) warrant
the sentence imposed even without the enhancement.

Although it would have been helpful to have the explana-
tions more closely linked to the possibility of error, the district

court's inoculating statement did reference the extensive nature of the operation and the goals of § 3553, thus linking the inoculating statement back to the judge's immediately preceding discussion which elucidated her reasons for the 360-month sentence. In the breath just before the inoculating paragraph, the district court judge explained:

> I think a sentence near the high end of the guideline range is needed to reflect the seriousness of this offense, promote respect for the law, provide just punishment, and afford specific deterrence to Mr. Caraway. I think this is particularly true when considering the culpability of Mr. Caraway, compared to coconspirators and the sentences that they received. A sentence near the high end of the guideline range likewise affords general deterrence. The public needs to see that this type of drug trafficking activity is taken seriously and punished significantly as evidence[d] by Congress alone mandating a sentence between 10 years and life imprisonment.

R. 548 at 106–07.

The district court further explained that Caraway's uncharged but relevant conduct, including the involvement of, conservatively, 125 kilograms of cocaine with a street value of $4 million was "the most relevant conduct that I have seen in my eight years on the bench, certainly both with respect to the drug weight and the money that is involved." *Id.* at 105. The court expressed further concern that "Mr. Caraway was charged with a violent armed robbery of another drug dealer, which occurred only months after he was told he would be

indicted … ." *Id.* at 106. Her explanation of his lengthy sentence also included references to his sophistication as a leader of the operation, and the "most culpable of the codefendants and others involved in the case." *Id.* at 105 (cleaned up). She also considered unrepresented criminal history and his lack of productive legitimate employment. *Id.* at 104. Finally, the judge considered the fact that any mitigating childhood trauma would have been far in the past for a man of 47, and hope for rehabilitation at his age was slimmer than it would be for a younger man. *Id.* at 104–05.

In short, the district court gave specific attention to the contested enhancement. The judge ruled on Caraway's objection to the obstruction enhancement, and explained her reasons for applying it. And she also explained the "parallel result"— properly calculating the Guidelines range without the enhancement and then tying the imposed sentence to the decisions the court made about the severity of the crime, Caraway's role in it, relevant conduct, and the need to reduce recidivism, protect the public from crime, and afford specific deterrence. *See Asbury*, 27 F. 4th at 581–82. Reading through the transcript at sentencing, we have no doubt that were we to remand this case to the district court, the court would impose the same sentence. The judgment and sentence are thus AFFIRMED.