In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 24-2000

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEAUNTA SENTREL TYLER,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:17-cr-40011-SLD-1 — **Sara Darrow**, *Chief Judge.*

---

ARGUED APRIL 3, 2025 — DECIDED JUNE 5, 2025

---

Before HAMILTON, BRENNAN, and SCUDDER, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant-appellant Deaunta
Tyler was convicted by a jury of attempted Hobbs Act rob-
bery, possessing a firearm in furtherance of a crime of vio-
lence, and unlawful possession of a firearm as a convicted
felon. The Supreme Court then held in *United States v. Taylor*,
596 U.S. 845, 858–59 (2022), that attempted Hobbs Act robbery
does not qualify as a "crime of violence" for purposes of 18
U.S.C. § 924(c). Tyler moved to vacate his conviction on the

charge of possessing a firearm in furtherance of a crime of violence. The district court granted the motion, set aside the § 924(c) conviction, and resentenced Tyler on the two remaining counts to a shorter but still substantial overall sentence. Tyler now appeals his revised sentence. He contends that the district court failed to address his key arguments in mitigation and provided an inadequate explanation for the sentence imposed. We affirm. Tyler waived any procedural objection regarding the court's supposed failure to consider and address his arguments in mitigation by telling the court that it had addressed his principal points. Further, the district court adequately explained its reasons for imposing a revised sentence within the guideline range.

I.   *Factual and Procedural History*

In January 2017, Deaunta Tyler, accompanied by Ledell Tyler and Dalvent Jackson, forcibly entered a home in Rock Island, Illinois, armed with a rifle and a handgun and in search of cocaine. Instead of drugs, they found a family spending a quiet evening together. With weapons brandished, the intruders demanded to know where the cocaine was. None existed, so the victims could not provide an answer. Nevertheless, Tyler and his accomplices moved the family throughout the house at gunpoint looking for drugs. As they searched in vain, the intruders passed the two firearms among themselves and threatened to kill the victims. At one point, Jackson fired the handgun in the foyer of the home. The three men remained for about an hour, eventually leaving with a few hundred dollars in cash and a small amount of marijuana.

Law enforcement responded to the scene after being notified. The next day, police officers identified the three men in

downtown Rock Island. A high-speed chase ensued, with appellant Tyler driving the getaway vehicle. He drove the wrong way down a one-way street for several blocks and, while speeding around a corner, lost control and crashed. Jackson and Ledell Tyler quickly surrendered, but appellant Tyler fled on foot. Officers eventually subdued him. The firearms used during the robbery were found in the wrecked vehicle.

In February 2017, a grand jury indicted appellant Tyler on three counts. Count One charged Tyler with attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951. Count Two charged him with possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). Count Three charged him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Count One carried a maximum prison term of twenty years. Count Two required a mandatory minimum sentence of ten years to be served consecutively. Count Three carried a maximum prison term of ten years. Tyler's co-defendants were charged with the same offenses, and a jury found the three men guilty on all counts.

In April 2018, the district court held a joint sentencing hearing for appellant Tyler and accomplice Jackson. Both faced a Sentencing Guidelines range of 360 months (thirty years) to life in prison, and the government recommended a 360-month sentence for each. The government emphasized that Jackson's conduct was the most aggravated. He fired a gun during the robbery, acted in the most threatening manner, and later tried to obstruct justice by directing his girlfriend to influence a witness improperly. Although Tyler's conduct was comparatively less severe, it was still serious. He willingly participated in the attempted robbery, handled the

firearms, led police on a high-speed chase that ended in a serious crash, and resisted arrest. He also had a prior federal drug conspiracy conviction, for which he had avoided a mandatory minimum and received a below-guideline sentence.

The court sentenced Jackson first, describing him as "the leader of this operation." It called the offense "incredibly disturbing," noting that the defendants had broken into a home and terrorized a family at gunpoint for nearly an hour. The court also emphasized that Jackson fired a firearm inside the house and had an extensive criminal history. The court sentenced Jackson to a total of 360 months in prison: concurrent terms of 240 months for attempted Hobbs Act robbery and 120 months for firearm possession, followed by a mandatory consecutive 120-month term for the conviction under § 924(c).

Turning to Tyler, the court observed that many of its earlier comments applied equally. The offense was "incredibly serious," had a lasting impact on the victims, and the defendants had passed firearms among themselves during the robbery. The court also noted Tyler's "long string of uninterrupted criminal activity," repeated failures on supervision, and placement in the highest criminal-history category. Emphasizing the value of the Guidelines in avoiding unwarranted disparities, the court found that a sentence "slightly less" than Jackson's was appropriate. Accordingly, the court sentenced Tyler to a total of 330 months: concurrent terms of 210 and 120 months on Counts One and Three, followed by the mandatory consecutive 120-month sentence on Count Two under § 924(c).

Two months later, the court sentenced co-defendant Ledell Tyler to a total of 180 months—60 months on the attempted robbery and firearm possession counts and a

consecutive 120-month term under § 924(c). All three defendants filed direct appeals, but we dismissed them when all three of their lawyers filed *Anders* briefs asserting that no non-frivolous challenges were available. *United States v. Tyler*, 780 F. App'x 360 (7th Cir. 2019); see generally *Anders v. California*, 386 U.S. 738 (1967).

In July 2022, appellant Tyler moved to vacate his sentence under 28 U.S.C. § 2255, arguing that, in light of *United States v. Taylor*, 596 U.S. 845 (2022), an attempted Hobbs Act robbery no longer qualified as a crime of violence under 18 U.S.C. § 924(c). The government agreed, and the district court granted the motion. The court vacated Tyler's § 924(c) conviction and scheduled resentencing on the remaining counts. Tyler faced a new guideline range of 210 to 262 months. At resentencing, he objected to several enhancements, arguing that, because attempted Hobbs Act robbery was not categorically a crime of violence, no violence-related enhancements should apply. The court disagreed, emphasizing that it still must consider the offense conduct when applying the Guidelines. The government urged the court to impose a new sentence that mirrored the original term, consistent with the reduction granted to co-defendant Ledell Tyler after his § 924(c) conviction was also vacated. The court acknowledged that, although the offense no longer qualified as a "crime of violence" under the categorical approach, the defendants' actual conduct was in fact "extremely violent." Tyler, for his part, argued for a 120-month sentence, highlighting his supposedly lesser role in the offense.

The court thoroughly reviewed the sentencing factors and reaffirmed its prior assessment that Tyler's conduct remained serious despite the vacating of the § 924(c) conviction. The

court emphasized the profound impact on the victims, Tyler's attempt to flee, and his history of criminal behavior. It also noted that Tyler's post-sentencing conduct was mixed—he was involved in an altercation with another inmate but also attended prison programs. The court ultimately imposed a total sentence of 240 months, including concurrent terms of 240 months on Count One and 120 months on Count Three. The new sentence amounted to a 90-month reduction from Tyler's original sentence.

Tyler has appealed his revised sentence. During the pendency of Tyler's appeal, the district court also resentenced codefendant Jackson to consecutive terms of 240 months and 48 months on the remaining counts, for a total sentence of 288 months in prison.

II. *Analysis*

Tyler challenges his sentence on two grounds. First, he argues that the district court failed to address his principal arguments in mitigation. Second, he asserts that the court provided an inadequate explanation for his sentence.[1] The government counters that Tyler waived any objection to the court's treatment of his arguments in mitigation and that, even in the absence of waiver, the sentencing explanation satisfies the requirements of 18 U.S.C. § 3553(c). We start with the dispute about waiver.

---

[1] In his opening brief, Tyler also contested the substantive reasonableness of his within-guideline sentence. Because he later withdrew the argument, we do not address it.

A. *Waiver*

By confirming that the court had addressed sufficiently his arguments in mitigation, Tyler waived a challenge based on a supposed failure to do so. A little history may be useful. In *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005), we wrote that, when imposing a sentence, a district court must generally address a defendant's principal arguments in mitigation. Courts are afforded broad discretion during sentencing, but the record must show that the court actually exercised that discretion. See, e.g., *United States v. Miranda*, 505 F.3d 785, 792–94 (7th Cir. 2007) (remanding for resentencing where district court failed to address defendant's principal, non-frivolous argument for a lower sentence based on well-documented and severe mental health problems); *Cunningham*, 429 F.3d at 679–80 (ordering resentencing because sentencing court "passed over in silence the principal argument made by the defendant even though the argument was not so weak as not to merit discussion"); see generally *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999) ("a discretionary ruling … cannot be upheld when there is no indication that the judge exercised discretion"), citing *Foman v. Davis*, 371 U.S. 178, 182 (1962).

We then began to see numerous appeals invoking the *Cunningham* principle. Because a sentencing judge's explanation of the reasons for a sentence often came last in time, defendants did not have opportunities to raise the *Cunningham* principle when it would do the most good—when the judge could cure any problem. We encouraged sentencing judges to ask defense counsel whether they were satisfied that the court had addressed their principal arguments in mitigation, so that any further explanation could be provided on the spot rather

than a year or more later after an appeal. See *United States v. Garcia-Segura*, 717 F.3d 566, 568–69 (7th Cir. 2013). If the defense said it was satisfied that the court had addressed the principal arguments in mitigation, a challenge under *Cunningham* would be deemed waived. *Id*. at 569. We soon began to apply that waiver principle. E.g., *United States v. Donelli*, 747 F.3d 936, 940–41 (7th Cir. 2014), and other progeny of *Garcia-Segura*.

*Cunningham* and other decisions enforcing the requirement that sentencing courts address defendants' principal, nonfrivolous arguments do not limit a court's substantial discretion in selecting an appropriate sentence under the framework of 18 U.S.C. § 3553(a). See *Donelli*, 747 F.3d at 939–40. Rather, our precedents are designed to ensure that courts meaningfully address the key arguments influencing sentencing decisions. *Id.* This safeguard rests on the principle that a "judge who fails to mention a ground of recognized legal merit (provided it has a factual basis) is likely to have committed an error or oversight." *Cunningham*, 429 F.3d at 679.

In resentencing Tyler in this case, the district court followed the path we encouraged in *Garcia-Segura*. After explaining the basis for Tyler's sentence, the court asked defense counsel: "Have I addressed all of your principal arguments in mitigation?" Counsel responded that the court had but requested additional explanation regarding its reasons for applying the contested sentencing enhancements. The court further clarified its reasoning and asked: "So does that provide sufficient clarification?" Defense counsel replied, "Yes, Judge." This confirmation waived Tyler's *Cunningham* procedural challenge in this appeal. See, e.g., *United States v. Perez*, 21 F.4th 490, 494 (7th Cir. 2021) (applying *Garcia-Segura*

waiver to argument about unwarranted sentencing dispari-
ties where defense counsel twice responded affirmatively
when asked if the court had addressed principal arguments
in mitigation); *Donelli*, 747 F.3d at 940–41 (finding waiver). To
be clear, this process results in waiver, which forecloses ap-
pellate review of the point, not mere forfeiture, which could
allow plain-error review. The sentencing court gave defense
counsel more than one opportunity to invite attention to any
overlooked mitigation arguments. He declined. That proce-
dural safeguard—and check against avoidable appeals—is
what we envisioned with the *Garcia-Segura* path toward
waiver. We turn next to Tyler's related but distinct argument
that the district court inadequately explained the reasons for
the revised sentence.

B. *The Adequacy of the District Court's Explanation*

We review de novo a sentence's procedural reasonable-
ness. *United States v. Stephens*, 986 F.3d 1004, 1008 (7th Cir.
2021). Our analysis is guided by a practical assessment of the
entire record as well as the defendant's individual character-
istics. See *Concepcion v. United States*, 597 U.S. 481, 486 (2022).
We do not demand artificial thoroughness in sentencing.
*United States v. Sanchez*, 989 F.3d 523, 540 (7th Cir. 2021). "A
short explanation will suffice where the context and record
make clear the reasoning underlying the district court's con-
clusion." *United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir.
2008), citing *Rita v. United States*, 551 U.S. 338, 359 (2007). As
we have said in many cases, a sentencing judge "need not be-
labor the obvious." E.g., *United States v. Caraway*, 74 F.4th 466,
469 (7th Cir. 2023), quoting *United States v. Baker*, 56 F.4th
1128, 1132 (7th Cir. 2023); *United States v. Wade*, 890 F.3d 629,

632 (7th Cir. 2018), quoting *United States v. Reed*, 859 F.3d 468, 472 (7th Cir. 2017).

We typically require less explanation when, as here, the sentence is within the correct guideline range. E.g., *United States v. Curby*, 595 F.3d 794, 797 (7th Cir. 2010) (affirming sentence where court's discussion of mitigation arguments was brief but sentence was at bottom of guideline range). It is enough if the record gives us confidence that the court meaningfully considered the defendant's arguments, "even if implicitly and imprecisely." *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010). A sentencing court must "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita*, 551 U.S. at 356, citing *United States v. Taylor*, 487 U.S. 326, 336–37 (1988).

The district court met that standard here. Despite receiving positive responses to its *Garcia-Segura* inquiries, the court nonetheless addressed Tyler's principal mitigation argument—that he was less culpable than his co-defendants—and the other factors affecting the sentence. The court acknowledged that Tyler was less violent than his co-defendants in some respects but emphasized the overall violent nature of the offense. It also underscored his resisting arrest, substantial criminal history, heightened risk of recidivism, and mixed disciplinary record while in custody. After weighing the § 3553(a) factors, the court imposed a within-guideline sentence. The Supreme Court has upheld sentences supported by far less detailed reasoning. See, e.g., *Chavez-Meza v. United States*, 585 U.S. 109, 118–20 (2018) (holding that sentencing court's "minimal" explanation of sentencing modification was sufficient); *Rita*, 551 U.S. at 356–58 (upholding sentence

where judge explained simply that the guideline sentence imposed was "appropriate" and noting that the "law leaves much" to "the judge's own professional judgment" with respect to the depth of a sentencing explanation). The district court's explanation here easily met the standard established by precedent for procedural reasonableness.

This case offers a useful reminder, though: We reaffirm that a *Garcia-Segura* waiver bars procedural objections based on the court's alleged failure to address a defendant's principal arguments in mitigation when counsel confirms that the court has considered those arguments. It may be prudent in the future for courts to repeat the *Garcia-Segura* question, as Chief Judge Darrow did here, if substantive exchanges take place in response to the question when first asked. A brief, on-the-record confirmation that the court has considered a defendant's principal arguments is a simple yet powerful tool to promote perceived fairness in sentencing and to avoid unnecessary appeals.

AFFIRMED.