Fred NANCE, Jr., Plaintiff–Appellant,

v.

J.D. VIEREGGE, et al., Defendants–Appellees.

No. 96–1822.

United States Court of Appeals, Seventh Circuit.

Argued May 12, 1998.

Decided June 17, 1998.

Robert J. Palmer, May, Oberfell & Lorber, South Bend, IN, for Plaintiff–Appellant.

Rita M. Novak, Barbara E. Pitts, Office of the Attorney General, Chicago, IL, Marcia L. McCormick (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendants–Appellees.

Before COFFEY, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Late in December 1992 Fred Nance was transferred from the Graham Correctional Center in Illinois to the prison at Joliet, so that he could be closer to the court where he was to appear to ask for leave to withdraw his guilty plea. Nance arrived at the transfer point with a box containing documents and other personal possessions. J.D. Vieregge, the prison's property clerk, told Nance that he could not take the box with him on the bus but that it would have to be sent separately. Nance caused a ruckus; ultimately Warden Riegel appeared and assured Nance that any legal papers in the box would follow promptly. Unfortunately, some contents of the box were sent to the prison at Stateville, and the legal papers were never seen again. The ruckus led to the imposition of a mild sanction: Nance lost commissary privileges for two weeks. That deprivation did not affect any liberty or property interest, see *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), and is therefore irrelevant to this case under 42 U.S.C. § 1983. But Nance did have a property interest in his possessions, and the fact that some of the documents were photocopies of cases Nance wanted to have handy when arguing in support of his motion sets up an argument that Vieregge deprived him of access to the courts by misdirecting his possessions. The district court dismissed Nance's complaint, ruling that Nance had not pleaded facts showing that Vieregge acted deliberately.

■ The ground the district court gave for its decision is incompatible with Fed. R.Civ.P. 8, which establishes a system of notice pleading. Plaintiffs need not plead facts or legal theories; it is enough to set out a claim for relief, which Nance did. See, e.g., *Cook v. Winfrey*, 141 F.3d 322 (7th Cir.1998); *Albiero v. Kankakee*, 122 F.3d 417, 419 (7th Cir.1997); *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir.1992); *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 723 (7th Cir.1986). A complaint may not be dismissed unless no relief could be granted "under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The district judge wrote that all of the events mentioned in the complaint are consistent with negligence, which is true but irrelevant. None of Nance's factual averments *rules out* the possibility that Vieregge acted deliberately, so the complaint may not be dismissed on this ground even if negligence is a more likely explanation than malice. Only later—via summary judgment or trial—does a court sift the probable from the merely possible. Civil rights complaints are not held to a higher standard than complaints in other civil litigation. *Crawford–El v. Britton*, —— U.S. ——, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Although the first sen-

tence of Fed.R.Civ.P. 9(b) establishes a special rule for allegations of fraud (which must be pleaded "with particularity"), the second sentence reads: "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Nance's complaint alleges that Vieregge acted intentionally; nothing more is required.

■ Nonetheless, the district judge was right to dismiss the complaint. Suppose Vieregge spitefully misdirected Nance's papers. Illinois maintains a system of courts that can provide compensation for torts, and the opportunity to recover damages for a rogue guard's wrongful conduct supplies all of the process that is due—whether the deprivation was negligent, see *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), or intentional, *Hudson v. Palmer*, 468 U.S. 517, 531–36, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), does not affect this conclusion. See *Easter House v. Felder*, 910 F.2d 1387 (7th Cir.1990) (en banc). Nance's contention that the loss of photocopies deprived him of access to the courts is not directly subject to *Parratt* and *Hudson*, because no amount of process (or promise of compensation) authorizes a state to foreclose a prisoner's access to a federal courthouse. But these cases may apply indirectly, when the prisoner seeks relief unrelated to access.

■ To establish a deprivation of access to the courts, a prisoner must show that unjustified acts or conditions "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). If the hindrance is ongoing, prospective relief can compel the state to restore access so that the claim may be vindicated. This was the theory behind the order in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), to improve the prison's law library. But Nance does not protest an ongoing hindrance or contend that another deprivation of legal materials is likely. He has been released from the state's custody. Only damages are available. But damages for what injury? If the injury in question is losing the underlying case, then *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), comes into play. *Heck* holds that a damages remedy that necessarily implies the invalidity of a criminal conviction (or the loss of good-time credits, see *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)) is impermissible while that conviction stands. Nance pleaded guilty; his motion to withdraw the plea was denied; and although the prison's unconstitutional hindrance of his efforts to withdraw the plea (if that is what occurred) would be a good ground for a new hearing on the motion to set aside the plea, it would not establish that Nance is entitled to damages for wrongful incarceration—not unless he went to trial and was acquitted, or the invalidity of his incarceration was established in some other fashion. The holding of *Lewis* that a claim based on deprivation of access to the courts requires proof of concrete injury, combined with the holding of *Heck*, means that a prisoner in Nance's position must have the judgment annulled before damages are available for wrongful imprisonment. Although five Justices concluded in *Spencer v. Kemna*, —— U.S. ——, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), that the approach of *Heck* does not govern when other relief is *impossible*, Nance does not contend that he satisfies that condition. Like other states, Illinois allows a governor to pardon a released prisoner and offers a remedy along the lines of coram nobis to wipe out lingering civil disabilities; some of these options may remain open to Nance.

*Heck* added, however, that claims that do not call into question the validity of a conviction or comparable decision remain viable under § 1983. 512 U.S. at 482–83, 114 S.Ct. 2364; see also *Spencer*, —— U.S. at ——, 118 S.Ct. at 988. Nance has forsworn any effort to recover damages for wrongful imprisonment and seeks only compensation for the value of his duplicated cases. But if the only damages in prospect are for replacement cost, the access-to-the-courts claim merges into the run of the mill due process claim. What sense could it make to have parallel proceedings in state and federal court, each seeking damages measured by the cost of copying the same sheaf of documents? *Parratt* and *Hudson* would not be worth the

paper they were written on if they could be evaded so easily. What makes an access-to-the-courts claim distinctive is the remedy—equitable relief to restore access, or damages to compensate for the loss of the underlying litigation. When neither remedy is sought (or appropriate) the access claim should be treated the same way as a simple lost-or-stolen-property claim. Nance did not lose any irreplaceable documents from the record; he does not contend that a claim of actual innocence has been thwarted; it is as if a guard dropped a volume of the Federal Reporter, Third Series, into a wash basin, requiring its replacement. Indeed, it might clarify matters to say that when the only relief sought is the value of missing property the prisoner is not making an "access" claim at all.

Nance has two options, which are not mutually exclusive: to seek damages in state court for the value of the photocopies as ordinary personal property, and to initiate a collateral attack or request for pardon concerning the judgment that rests on his guilty plea. The dismissal of his § 1983 complaint is without prejudice to the pursuit of those options, and on that understanding the judgment is

AFFIRMED.