**Earnest LUECK Plaintiff,**

v.

**Richard WATHEN, et al. Defendants.**

**No. 7–02–CV–147–BD.**

United States District Court,
N.D. Texas,
Wichita Falls Division.

May 19, 2003.

.Earnest Lueck, Iowa Park, TX, Pro se.

Harold J. Liller, Assistant Attorney General, Austin, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Defendants Richard Wathen, James D. Mooneyham, Mark Canedo, and Michael D. Seigler have filed a motion for summary judgment in this *pro se* prisoner civil rights case. For the reasons stated herein, the motion is granted in part and denied in part.

## I.

Plaintiff Earnest Lueck is serving concurrent 10–year and 30–year sentences for kidnapping his ex-wife and murdering her boyfriend at the Desperado Club in Trinity, Texas. (Def.App., Exh. B). He is presently incarcerated at the James V. Allred Unit of the TDCJ–ID. After his convictions were affirmed on direct appeal, plaintiff enlisted the help of another inmate, Pierre Smith, to prepare an application for writ of habeas corpus on grounds of ineffective assistance of counsel. Plaintiff gave Smith copies of his state court records, appellate briefs, trial notes, and other documents he needed to complete the writ. (Plf. Compl. at 3–4; Plf.App., Exhs. P–6A & P–8A). Among these materials was the affidavit of Tom Brisco, a witness to the shooting. According to plaintiff, Brisco would have supported his self-defense theory by testifying that plaintiff did not bring a gun into the Desperado Club. Despite the importance of this testimony, Brisco was not interviewed by defense counsel or called as witness at trial. (Plf.App., Exh. P–6B & P–8B).

On or about November 5, 2001, the Allred Unit went on lockdown status. Plaintiff was escorted to a private office where his property was searched and he was interrogated by Assistant Warden James Mooneyham. Also present were Officers Mark Canedo and Michael Seigler. (Plf. Compl. at 4–5; Plf.App., Exh. P–8A). Mooneyham asked plaintiff if anyone was helping him with his state writ. Plaintiff said that Smith was assisting him and had all of his state court papers. Upon receipt of this information, Mooneyham ordered Canedo and Seigler to confiscate plaintiff's documents from Smith. (Plf.App., Exh. P–8A).[1] Plaintiff assumed that his legal materials would be searched for contraband and returned to him in accordance with prison policy. However, on November 26, 2001, plaintiff received a letter from Smith advising that none of the materials had been returned. (Id.).

On December 8, 2001, plaintiff confronted Canedo about his legal documents. Canedo responded, "You don't understand Lueck, I returned your property and I can make it hard if you keep pursuing the matter." (Id.; see also Plf.App., Exh. P–7). Plaintiff then filed a grievance and wrote a letter to the senior warden. (Plf. Compl., Exhs. 1 & 2). Mooneyham answered the grievance by telling plaintiff, "I talked w/ Officer Canedo who states the transcripts were returned to you." (Id., Exh. B). After plaintiff filed a second grievance, Mooneyham recanted his earlier statement and told plaintiff that Canedo and Seigler could not find his legal documents. (Plf.App., Exh. P–8A). Without these materials, plaintiff cannot complete his state writ.

Plaintiff now sues Mooneyham, Canedo, Seigler, and Assistant Warden Richard Wathen for civil rights violations under 42 U.S.C. § 1983.[2] More particularly, plaintiff contends that defendants have prevented him from challenging his conviction on collateral review by confiscating his legal documents, which in turn deprives him of his constitutional right of access to the courts. Defendants move for summary judgment as to this claim and on their immunity defenses. The motion has been

1. Richard Wathen, Assistant Warden of the Allred Unit, states in his affidavit that TDCJ Administrative Directive 3.72, in conjunction with Administrative Directive 7.90, prohibits an inmate from keeping another inmate's legal materials in his cell without pre-approval from the Warden's Office. (See Def.App., Exh. A). However, copies of these TDCJ Administrative Directives are not included in the summary judgment record.

2. Plaintiff sues each defendant in both his official and individual capacity. (Plf. Resp. Br. at 4).

fully briefed by the parties and the motion is ripe for determination.

## II.

As grounds for their motion, defendants contend that: (1) plaintiff cannot establish an "actual injury" or show that his underlying habeas claims are not frivolous; (2) there is no evidence that Wathen and Mooneyham were personally involved in the events giving rise to the alleged constitutional violation; and (3) plaintiff's access claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The court will address each argument in turn.

## A.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 131 (5th Cir.), *cert. denied*, 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matter of Gleasman*, 933 F.2d 1277, 1281 (5th Cir.1991).

■ A movant who does not have the burden of proof at trial must point to the absence of a genuine fact issue. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995). The burden then shifts to the non-movant to show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). A *pro se* plaintiff's verified complaint and sworn interrogatory answers can be considered as summary judgment evidence to the extent that such pleadings comport with the requirements of Rule 56(e).[3] *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir.1993). However, conclusory statements, hearsay, and testimony based on conjecture or subjective belief are not competent summary judgment evidence. *Topalian*, 954 F.2d at 1131.

## B.

■ Prisoners have a fundamental constitutional right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997). However, the right of access is not unlimited. "[I]t encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.'" *Johnson*, 110 F.3d at 310–11, *quoting Lewis v. Casey*, 518 U.S. 343, 356, 116 S.Ct. 2174, 2182, 135 L.Ed.2d 606 (1996). In order to establish a claim for denial of access to the courts, a

---

**3.** Rule 56(e) provides, in relevant part:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.
FED. R. CIV. P. 56(e).

prisoner must demonstrate that he suffered "actual injury." This, in turn, requires proof that the denial of access "hindered his efforts to pursue a legal claim." *Lewis*, 116 S.Ct. at 2180. *See also McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.1998).

tance of counsel without affirmative showing of missing evidence or testimony). Moreover, plaintiff is unable to contact Brisco to obtain another affidavit. This evidence, viewed in the light most favorable to plaintiff, is sufficient to demonstrate "actual injury." [4]

### 1.

■ Defendants contend that plaintiff cannot establish an "actual injury" because he has failed to explain why he could not file a state or federal writ without a copy of his trial transcript. This narrow argument misconstrues the factual basis of plaintiff's claim. According to plaintiff, defendants not only confiscated a copy of his trial transcript, but also the affidavit of a key witness, Tim Brisco. Plaintiff alleges that Brisco would have supported his self-defense theory and contradicted the testimony of his ex-wife by testifying that plaintiff did not bring a gun into the club on the night of the shooting. Despite the importance of this testimony, Brisco was not interviewed by defense counsel. Plaintiff and his legal advisor, Pierre Smith, were in the process of preparing a state writ challenging his murder conviction on grounds of ineffective assistance of counsel when his legal papers were confiscated by defendants. Without this affidavit, plaintiff cannot establish the materiality of the missing testimony which is necessary to prove his ineffective assistance of counsel claim. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir.1994) (court cannot begin to analyze claim of ineffective assis-

### 2.

■ Defendants further argue that plaintiff cannot show that his underlying habeas claims are not frivolous. In support of their position, defendants point out that the state appellate court summarily affirmed plaintiff's convictions and found "no arguable grounds to support the appeal." *See Lueck v. State*, 2001 WL 306125 (Tex.App.—Houston [14th Dist.], Mar.29, 2001, pet. ref'd). This is true. However, while plaintiff raised an ineffective assistance of counsel claim on direct appeal, the claim was not based on counsel's failure to interview Tim Brisco. This ground for relief would have been raised for the first time on collateral review had defendants not confiscated Brisco's affidavit. The court cannot say that plaintiff's ineffective assistance of counsel claim, which is based on the failure of his attorney to interview a key witness, is frivolous as a matter of law.

### C.

■ Next, Wathen and Mooneyham contend that there is no evidence they were personally involved in the events giving rise to the alleged constitutional viola-

4. Defendants argue that the facts of this case are similar to those presented in *Root v. Towers*, 238 F.3d 423, 2000 WL 1888734 (6th Cir.2000). In *Root*, an inmate sued four correctional officers for intentionally losing or destroying transcripts from his criminal trial. The Sixth Circuit, in an unpublished opinion, affirmed the dismissal of this claim because the prisoner failed to show that he could not challenge his conviction on non-frivolous grounds without the transcript. *Id.* at *1. To the extent that *Root* can even be cited as persuasive authority, the facts of that case are materially different than those presented herein. In the instant case, plaintiff alleges that the affidavit of a key witness was confiscated by defendants which prevented him from challenging his conviction on grounds of ineffective assistance of counsel. These facts, if proved, could give rise to a claim for denial of access to the courts.

tion. Personal involvement is an essential element in a civil rights action under 42 U.S.C. § 1983. *See Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir.), *cert. denied,* 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). In order to satisfy this requirement, a plaintiff must establish either that the defendant "was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the [defendant] and the alleged constitutional violation." *Douthit v. Jones,* 641 F.2d 345, 346 (5th Cir.1981). Here, plaintiff has failed to establish any personal involvement on the part of Assistant Warden Richard Wathen. He alleges only that Wathen, who serves on the prison grievance committee, "erroneously reviewed this matter." (Plf. Resp. Br. at 1). This is insufficient to state a claim for denial of access to the courts against this defendant.

 The court reaches a different conclusion with respect to Assistant Warden James D. Mooneyham. Plaintiff specifically alleges that Mooneyham directed Officers Mark Canedo and Michael Seigler to confiscate his legal materials in violation of prison policy.[5] This is a sufficient causal

connection to create a genuine issue of material fact as to Mooneyham's involvement in the underlying constitutional violation.

### D.

 Defendants further argue that plaintiff's claim is barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *Heck* precludes a prisoner from maintaining a civil rights action for damages based on the legality of a prior criminal proceeding unless a state court or federal habeas court has determined that the terms of confinement are in fact invalid. The critical inquiry is whether a judgment in favor of the plaintiff in the civil rights case would "necessarily imply the invalidity of his conviction or sentence." *Id.,* 114 S.Ct. at 2372. If so, the claim is barred unless the conviction has been reversed or declared invalid. *Id.; Hainze v. Richards,* 207 F.3d 795, 798 (5th Cir.), *cert. denied,* 531 U.S. 959, 121 S.Ct. 384, 148 L.Ed.2d 296 (2000).

Without citing any authority other than *Heck,* defendants state in a conclusory fashion that plaintiff cannot recover money damages against prison officials who may

---

5. The summary judgment evidence submitted by plaintiff, which is not objected to by defendants, includes TDCJ policies governing searches and shakedowns of legal materials. These policies provide, in relevant part:

> The personal legal materials (including pleadings; transcripts; books; notes; drafts; and correspondence to and from attorneys, courts and public officials) belonging to a TDCJ offender are confidential. They may not be read by staff as part of a search or shakedown. They may be physically inspected to see that no physical contraband (such as weapons or drugs) is secreted in them. During the course of any search or shakedown, staff members shall not scatter, destroy or otherwise unduly disrupt the offender's legal materials ...
> * * * * * *
> If any written material or book is removed from an offender's legal materials and con-

fiscated by a staff member during the course of a search or shakedown, the offender shall receive written notice within forty-eight (48) hours of the confiscation, informing him of the property removed, the reason for its removal, and his right to file a grievance. Copies of all such notices shall be filed in the offender's unit file and the facility administrative records. Any offender may appeal the confiscation of any written material or book through normal grievance procedures.

(Plf.App., Exh. P–2). According to plaintiff, Mooneyham directed the search and confiscation of his legal materials in violation of these policies. Defendants offer no evidence to the contrary.

have deprived him of the right to file a meritorious habeas petition. (*See* Plf. MSJ Br. at 10). Of course, *Heck* did not involve an access claim. Rather, the prisoner sued state prosecutors and police officials for false arrest and destroying evidence that resulted in his conviction. *Heck*, 114 S.Ct. at 2368. Such claims go to the very heart of the conviction itself. By contrast, the plaintiff in this case seeks redress for being deprived of the opportunity to even challenge his conviction. The Seventh Circuit was confronted with this precise situation in two cases, *Nance v. Vieregge*, 147 F.3d 589 (7th Cir.), *cert. denied*, 525 U.S. 973, 119 S.Ct. 426, 142 L.Ed.2d 347 (1998) and *Hoard v. Reddy*, 175 F.3d 531 (7th Cir.), *cert. denied*, 528 U.S. 970, 120 S.Ct. 411, 145 L.Ed.2d 320 (1999). *Nance* involved a prisoner who was forced to surrender possession of his legal materials and other items of personal property while being transferred from one unit to another. While in transit, some of his papers were misdirected by prison authorities and never seen again. Among the missing documents were photocopies of cases that the prisoner "wanted to have handy" when presenting a motion to withdraw his guilty plea. The prisoner brought a civil rights action for money damages against the prison property clerk alleging denial of access to the courts. In affirming the dismissal of this claim, the Seventh Circuit wrote:

> *Heck* holds that a damages remedy that necessarily implies the invalidity of a criminal conviction ... is impermissible while that conviction stands. Nance pleaded guilty; his motion to withdraw the guilty plea was denied; and although the prison's unconstitutional hindrance of his efforts to withdraw the plea (if that is what occurred) would be a good

ground for a new hearing on the motion to set aside the plea, it would not establish that Nance is entitled to damages for the wrongful incarceration—not unless he went to trial and was acquitted, or the invalidity of his incarceration was established in some other fashion. The holding of *Lewis* that a claim based on deprivation of access to the courts requires proof of concrete injury, combined with the holding of *Heck*, means that a prisoner must have the judgment annulled before damages are available for wrongful imprisonment.

*Nance*, 147 F.3d at 591. The court recognized that *Heck* does not bar prospective relief to restore access to the courts so the prisoner can litigate a non-frivolous claim. *Id.* at 591. However, the prisoner in *Nance* did not allege an ongoing hindrance and had been released from state custody before he filed his federal civil rights action. Nor did he lose any "irreplaceable documents." *Id.* at 592. On those facts, the Seventh Circuit held that the prisoner had failed to state an access claim, but only a claim for the value of missing property which is not actionable under section 1983. *Id.*[6]

Just over a year after *Nance* was decided, the Seventh Circuit was presented with a similar situation in *Hoard*. In that case, the prisoner alleged that prison officials violated his right of access to the courts by hindering his efforts to collaterally attack his conviction. The district court dismissed this claim under *Heck*. On appeal, the court recognized that "there is probably an exception to the rule of *Heck* for cases in which no route other than a damages action under section 1983 is open to the person to challenge his conviction." *Hoard*, 175 F.3d at 533. However, the prisoner did not argue that the alleged

---

**6.** The court analogized the claim made by the prisoner to a situation where "a guard dropped a volume of the Federal Reporter, Third Series, into a wash basin, requiring its replacement." *Nance*, 147 F.3d at 592.

constitutional violation "forever barred him from pursuing his state postconviction remedy so that the only relief available to him is damages." *Id.* The court then addressed the paradox of *Heck* in the context of a civil rights claim alleging denial of access to the courts:

A claim for damages in respect of an unconstitutional denial of access to the courts, unlike a claim of damages for an unconstitutional conviction, does not require the plaintiff to prove that, had it not been for the denial, he would have won his case. It is enough that his case was not frivolous ... The question arises how this conclusion can be squared with *Heck*, or with the ruling in *Nance* that only prospective relief is available in a prisoner's suit complaining of denial of access to the courts unless he has succeeded in getting his conviction annulled, since otherwise an effort to obtain damages would be blocked by *Heck*. That ruling seems to exclude a damages claim by a prisoner who has merely a colorable case.

The contradiction ... is only apparent. To get damages you must prove you lost something of monetizable value; but this is not required for an injunction—indeed, the inadequacy of one's damages remedy is normally a prerequisite to injunctive relief. A prisoner whose access to the courts is being blocked in violation of the Constitution cannot prove that, had it not been for the blockage, he would have won his case or at least settled it for more than $0 (the point emphasized in *Lewis*), he cannot get damages but he can get an injunction. In a case such as *Heck*, where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no conse-

quence if the conviction was valid, and so he cannot get damages until the conviction is invalidated ...

*Id.* at 533. *See also Cappas v. Dobbins*, 2001 WL 322000 at *2–3 (N.D.Ill. Apr. 2, 2001) (applying Seventh Circuit precedent in dismissing prisoner's access claim under *Heck*).

Although the facts of this case are similar in some respects to *Nance* and *Hoard*, the court need not decide whether to follow those non-binding authorities because, in addition to seeking money damages, plaintiff is also seeking an injunction. One form of relief requested in his complaint is an order requiring the defendants to return his legal documents. (Plf. Compl. at 4, ¶ VI). It is not clear from the summary judgment evidence that these documents, including the Brisco affidavit, are irretrievably lost. If plaintiff prevails on his access claim, the court could order defendants to search for the missing legal materials and, if they have been destroyed or cannot be found, replace the state court records and appellate briefs. Defendants could also be ordered to search for Brisco so plaintiff can obtain another affidavit. Clearly, *Heck* does not bar this type of relief.

The court also questions whether plaintiff is precluded from recovering monetary damages should injunctive relief prove inadequate and he is unable to challenge his conviction in state or federal court. At least five justices of the Supreme Court have suggested that *Heck* may not apply to persons without recourse to the habeas statute. *See Spencer v. Kemna*, 523 U.S. 1, 20–21, 118 S.Ct. 978, 989–90, 140 L.Ed.2d 43 (1998) (Souter, J., joined by O'Connor, Ginsburg, and Breyer, JJ., concurring) and *id.*, 118 S.Ct. at 991–92 n. 8 (Stevens, J., dissenting).[7] Plaintiff may well fall into this category. Applying *Heck*

---

**7.** The concurring justices in *Spencer* would hold that a person who is not "in custody," and therefore lacks standing to challenge his

conviction by way of habeas corpus, may seek damages in a civil action under 42 U.S.C. § 1983. Justice Stevens went even farther in

to the instant case puts the plaintiff in an untenable "Catch–22" situation. He would be precluded from suing defendants for violating his right of access to the courts until he successfully overturns his conviction, but cannot effectively challenge that conviction because defendants have confiscated important legal materials, including the affidavit of a key witness, necessary to obtain post-conviction relief. The result would be to deprive plaintiff of a remedy for the violation of a recognized and valued constitutional right.

Unlike the civil rights claims at issue in *Heck*, plaintiff's access claim does not "netessarily imply the invalidity of his conviction or sentence." *Heck*, 114 S.Ct. at 2372. Indeed, as the Seventh Circuit recognized in *Hoard*, there is no access claim if plaintiff is able to successfully challenge his conviction. Here, plaintiff seeks injunctive relief or monetary damages for being deprived of the opportunity to present non-frivolous claims on collateral review in an attempt to have his conviction set aside. Under these circumstances, *Heck* does not bar plaintiff's ability to bring a civil rights action. Defendants are not entitled to summary judgment on this ground.[8]

### III.

 Defendants also move for summary judgment on the grounds of Elev-enth Amendment and qualified immunity. The court initially observes that neither immunity defense applies to claims against the defendants in their official capacities for prospective injunctive relief. *See Ganther v. Ingle*, 75 F.3d 207, 210 & n. 5 (5th Cir.1996), *citing Ex parte Young*, 209 U.S. 123, 149, 28 S.Ct. 441, 449–50, 52 L.Ed. 714 (1908); *Mangaroo v. Nelson*, 864 F.2d 1202, 1208 (5th Cir.1989). Therefore, each defense will be considered only with respect to plaintiff's claim for money damages.

### A.

 The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI. Section 1983 does not create a remedy against a state or state agency. "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the state itself." *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct.

his dissent, expressing the view that the unavailability of a federal habeas remedy should open the gates of section 1983. *See also DeWalt v. Carter*, 224 F.3d 607 (7th Cir.2000) (allowing prisoner to bring section 1983 action arising out of retaliatory disciplinary sanctions that could not be challenged in habeas case). By analogy, a prisoner who is effectively barred from raising a non-frivolous claim in a federal habeas proceeding because the state has interfered with his right of access to the courts should be able to sue for money damages, to the extent those damages can be quantified. Where habeas relief is not available, allowing a civil action for damages does not violate the rationale behind *Heck*— "a simple way to avoid collisions at the intersection of habeas and § 1983." *Heck*, 114 S.Ct. at 2378.

**8.** Defendants also argue that plaintiff is precluded from recovering money damages under section 1983 for the loss of his property because Texas law provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). While this is a correct statement of law, the court does not read plaintiff's complaint to assert a claim for the value of his missing property.

2304, 2312, 105 L.Ed.2d 45 (1989). Consequently, the Eleventh Amendment bars any claim for money damages against defendants in their official capacities. *Ganther*, 75 F.3d at 210 (citing cases).

## B.

 Defendants further argue that plaintiff cannot adduce any evidence to overcome their entitlement to qualified immunity. Government officials are immune from suit for discretionary acts performed in good faith while acting within the scope of their authority unless their conduct violates a clearly established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The Supreme Court has clarified the analytical structure under which a claim of qualified immunity should be addressed. *Siegert v. Gilley*, 500 U.S. 226, 231–33, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). First, the court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999); *Siegert*, 111 S.Ct. at 1789. If the plaintiff alleges a constitutional violation, the court must decide whether that right was clearly established at the time of the incident. *Wilson*, 119 S.Ct. at 1697; *Siegert*, 111 S.Ct. at 1789. A constitutional right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The second prong of this inquiry necessarily depends on the unique circumstances of each case. *Id.*, 107 S.Ct. at 3039–40. In determining whether a defendant is entitled to qualified immunity on summary judgment, the facts should be construed in the light most favorable to the party asserting the injury. *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir.2003), *citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

 The court has already determined that genuine issues of material fact exist as to whether defendants engaged in conduct which, if proved, violated plaintiff's right of access to the courts. This right was "clearly established" at the time of the incident made the basis of this suit. *See Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); *Johnson*, 110 F.3d at 310. Nevertheless, defendants maintain that their actions were objectively reasonable in light of information they possessed when plaintiff's legal materials were confiscated and somehow misplaced. This may or may not be the case. However, there is sufficient evidence in the summary record to support a contrary conclusion. This evidence suggests that defendants violated established prison policy by scattering, destroying, and otherwise disrupting plaintiff's legal materials during a shakedown. (*See* Plf.App., Exh. P–2). Defendants failed to safeguard those materials or provide plaintiff with written notification identifying the property confiscated or the reason for its removal. (*Id.*). When plaintiff complained, he was initially told that the materials had been returned to him. This was untrue. Later, Mooneyham admitted that Canedo and Seigler could not find his legal documents. (*See id.*, Exh. P–8A). Canedo also threatened plaintiff, stating "I can make it hard for you if you keep pursuing the matter." (*Id.*, Exh. P–7). This evidence, viewed in the light most favorable to plaintiff, supports an inference that defendants knowingly violated prison policy and, in turn, his constitutional right of access to the courts. Defendants have not offered any evidence in an attempt to establish the objective reasonableness of their conduct. Consequently, the court is unable to con-

clude that defendants are entitled to summary judgment on their qualified immunity defense.

### *CONCLUSION*

Defendants' motion for summary judgment is granted in part and denied in part. The motion is granted as to all claims against Assistant Warden Richard Wathen and plaintiff's claim for monetary damages against the defendants in their official capacities. In all other respects, the motion is denied.

The court will set this case for trial by separate order.

SO ORDERED.