Perez **FUNCHES**, Plaintiff,

v.

Rachel L. **EBBERT**, et al., Defendants.

No. 07–cv–226–JPG–PMF.

United States District Court,
S.D. Illinois.

June 16, 2009.

Perez Funches, Dixon, IL, pro se.

Heidi Hildebrand, Illinois Attorney General's Office, Springfield, IL, for Defendants.

### MEMORANDUM AND ORDER

J. PHIL GILBERT, District Judge.

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 59) of Magistrate Judge Philip M. Frazier recommending that the Court grant the motion for summary judgment filed by defendants Ebbert and McCorkle (Doc. 41) to the extent it addresses Count 1.

### I. Report and Recommendation Review Standard

After reviewing a magistrate judge's report and recommendation, the Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in the report. Fed. R.Civ.P. 72(b). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir.1999).

### II. Report and Objections

Plaintiff Funches, an inmate at Lawrence Correctional Center ("Lawrence"), alleges that defendants Ebbert and McCorkle, who worked in Lawrence's prison law library, deprived him of his right of access to the courts by restricting his access to the prison law library in January 2006. Funches wanted library access to find out how to file a petition for a writ of *certiorari* to the United States Supreme Court to challenge a Seventh Circuit Court of Appeals November 9, 2005, decision denying his request for a certificate of appealability in a federal *habeas corpus*

action. Lawrence went on lockdown on January 5, 2006, and during the lockdown period when Funches informed Ebbert he needed assistance, she told him she could not provide the assistance he needed and he should speak with an inmate law clerk when the lockdown ceased. On January 31, 2006, about a week after Lawrence came off lockdown, Funches showed a court document to defendant McCorkle, who consulted an inmate library worker regarding calculating Funches's deadline to file his petition for *certiorari* and determined the filing deadline was April 6, 2006. McCorkle was wrong; the deadline was actually February 7, 2006. It appears that there may have been some confusion about how two post-decision motions Funches filed with the Court of Appeals affected the way time was counted. After speaking with McCorkle, Funches was allowed approximately two and a half hours in the law library in February 2006, and in March he requested an extension of the April 6, 2006, deadline from the Supreme Court. On April 6, 2006, the Supreme Court denied his request and informed him that his filing deadline had already expired.

The Report found that Ebbert and McCorkle were entitled to summary judgment because there was no evidence from which a reasonable jury could find they deliberately or intentionally misled or hindered Funches's access to the courts. It found that after the defendants calculated Funches's filing deadline, albeit erroneously, they afforded him adequate time in the law library to meet that deadline and that they did not intentionally prevent him from meeting his real deadline.

Funches objects (Doc. 60), arguing that he was denied meaningful access to the courts because the library did not provide adequately trained legal staff to assist him and because the defendants intentionally

worked in the library despite knowing they were not trained in the law. He argues Lawrence should have had a trained paralegal working at the library who could have helped him calculate his filing deadline accurately.

The defendants have responded to Funches's objection (Doc. 61), noting that the defendants met the qualifications the Illinois Department of Corrections required for their positions, which did not include legal training or the ability to offer legal advice.

The Court reviews this issue *de novo*.

## III. Analysis

■ Prisoners have a constitutional right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821–23, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). This means a prison must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. 1491. To prevail in an access to the courts claim, the inmate must show not only that the prison provided inadequate assistance, but also that "that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Where a plaintiff claims a defendant interfered with his access to the courts, he must show that the purported interference was intentional. *See Snyder v. Nolen*, 380 F.3d 279, 291 n. 11 (7th Cir. 2004) ("an allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts") (citing *Pink v. Lester*, 52 F.3d 73, 76 (4th Cir.1995)); *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir.1992) (finding mere isolated incident of negligence in clerk's failing to file tendered complaint did not

rise to the level of a constitutional violation actionable under section 1983).

■ While the Court certainly sympathizes with Funches, the bottom line is that the evidence does not show that Ebbert or McCorkle violated his constitutional rights by deliberately or intentionally interfering with his right to access the courts. Neither of them acted in a way that interfered with his meeting what the evidence shows they honestly believed was his filing deadline, April 6, 2006, and there is no evidence that the miscalculation of this deadline was anything more than an isolated instance of negligence. While the constitution requires states to provide inmates with resources necessary to petition the courts, *see Bounds*, 430 U.S. at 828, 97 S.Ct. 1491, it is not a guarantee against isolated instances of "legal malpractice" or bad advice by prison library staff or their inmate assistants.

Furthermore, to the extent Funches complains that the law library was not staffed with qualified people or that the prison's means of providing legal assistance during lockdown was constitutionally inadequate, there is no evidence Ebbert or McCorkle were responsible for any such shortcomings. Such faults rest with a higher authority than the library staff, which cannot be held liable in the absence of evidence that they were personally involved in decisions causing those shortcomings.

Funches also objects to the Report's omission of any mention of his objection to the severance of defendants Ryker and Walker from this case pursuant to *George v. Smith*, 507 F.3d 605, 607 (7th Cir.2007). The Court has thoroughly addressed this issue in prior orders (Docs. 24, 37 & 47) and need not restate its reasoning here.

The Court has reviewed the other portions of the Report to which Funches did not object and finds that they are not

clearly erroneous. Accordingly, the Court will adopt the Report in its entirety.

## IV. Conclusion

For the foregoing reasons, the Court:

- **ADOPTS** the Report (Doc. 59) in its entirety;
- **GRANTS in part** and **DENIES in part** the defendants' motion for summary judgment (Doc. 41). The motion is **GRANTED** to the extent it requests judgment on Count 1 and **DENIED** to the extent it requests judgment on Count 3. Defendant McCorkle is terminated from this action; and
- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case. Count 3, a free speech claim against Ebbert, remains for trial.

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION*

PHILIP M. FRAZIER, United States Magistrate Judge.

Before the Court is defendants' motion for summary judgment (Doc. No. 41). When plaintiff filed this § 1983 action for damages, he raised seven claims pertaining to his prison confinement. Counts 2, 4, and 5 were dismissed following threshold review and Counts 6 and 7 have been severed (Doc. Nos. 8, 47). Counts 1 and 3 remain.

In Count 1, plaintiff seeks damages from defendants Ebbert and McCorkle for a deprivation of his right of access to the courts. Specifically, he claims that they did not afford reasonable access to legal resources so that he could prepare and file a timely petition for a writ of certiorari with the United States Supreme Court. In Count 3, plaintiff seeks damages from defendant Ebbert for interfering with his right to use speech to seek redress of a grievance. Specifically, he claims that she confiscated twelve affidavits regarding living conditions in prison.

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The fact presented are construed in the light most favorable to the non-moving party and all reasonable and justifiable inferences are drawn in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To survive a summary judgment motion, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *Vanasco v. Nat'l–Louis Univ.*, 137 F.3d 962, 965 (7th Cir.1998).

### Count 1—Access to Courts

Plaintiff claims that defendants McCorkle and Ebbert deprived him of access to the courts by restricting his access to the prison law library in January, 2006, thereby preventing him from filing a timely petition for a writ of certiorari with the United States Supreme Court. The relevant facts, viewed under the standard described above, may be summarized as follows.

At all relevant times, plaintiff was an inmate at Lawrence Correctional Center. Defendants Ebbert and McCorkle were assigned to work in the prison library and were acting under color of state law. The library at Lawrence Correctional Center is divided into two areas: a main library and a law library. The law library is usually open between 8:00 a.m. and 3:00 p.m. Monday through Friday and can accommodate approximately 20 inmates at one time. The authorized library staff include a librarian, a library technical assistant, a paralegal assistant, and inmates. Some

inmates are assigned to "law clerk" work details. Inmate law clerks are authorized to perform research under the supervision of a paralegal assistant.

On November 9, 2005, the Seventh Circuit Court of Appeals announced a decision in plaintiff's federal habeas litigation, denying his request for a certificate of appealability. *Funches v. Hurlich*, No. 05–3322 (7th Cir.2005). Plaintiff filed a timely motion to withdraw the mandate.

On January 5, 2006, while plaintiff's motion to withdraw the mandate was pending before the Seventh Circuit Court of Appeals, Lawrence Correctional Center was placed on lockdown. During the lockdown, plaintiff was not able to leave his housing unit to visit the law library.

On January 6, 2006, the Seventh Circuit Court of Appeals issued a decision declining to withdraw its mandate.

On January 10 or 12, 2006, plaintiff had a conversation with defendant Ebbert. Plaintiff advised Ebbert that the Seventh Circuit Court of Appeals had denied his motion to withdraw the mandate and explained that he needed to perform some research in order to learn what to do in order to ask the Supreme Court to evaluate issues in his habeas litigation. Defendant Ebbert advised plaintiff that she was not a lawyer. She suggested that he submit a request slip to visit the law library so he could consult with the inmate workers when the lockdown ended. Plaintiff followed Ebbert's suggestion.

On January 22, 2006, the lockdown ended. Approximately one week later, defendant Ebbert issued a call pass allowing plaintiff to visit the law library for the purpose of proving that he had an approaching court deadline. Ebbert gives inmates priority access to the law library when they can establish approaching court deadlines. Priority access generally results in two-hour visits, twice per week.

On January 31, 2006, plaintiff arrived at the library and spoke with defendant McCorkle. He explained that the Seventh Circuit Court of Appeals had reached its decision in November, 2005, that the Court of Appeals had declined to withdraw its mandate, and that he needed access to the prison law library in order to determine how to take his case to the United States Supreme Court. He explained that he did not know the specific rules for continuing his challenge to his conviction. When defendant McCorkle asked to see the last document plaintiff had received, plaintiff presented his copy of the Seventh Circuit's order denying his request to recall the mandate. That order did not set forth a specific filing deadline. Defendant McCorkle showed the order to an inmate worker and asked the inmate to help calculate the deadline. She formed the impression that plaintiff needed priority access to the law library because he had an approaching deadline. Both plaintiff and defendant McCorkle thought the next deadline was April 6, 2006. The deadline was miscalculated.

On February 7, 2006, the deadline for plaintiff's petition for a writ of certiorari expired.

On February 22, 2006, plaintiff spent 10–15 minutes in the prison law library.

On February 25, 2006, plaintiff spent approximately two and one-quarter hours in the prison law library. He felt that he needed to perform additional research in order to prepare a meritorious petition for a writ of certiorari.

In March, 2006, plaintiff filed two motions with the United States Supreme Court, seeking extensions of the filing deadline. On April 6, 2006, these requests were denied on the basis that the filing deadline expired before the motions were received.

## I. Deliberate or Intentional Conduct

The defendants argue that the evidence could not support judgment in plaintiff's favor because the conduct attributed to them was unintentional. Plaintiff argues that the defendants were not qualified to perform their assigned duties and that they did not give him enough assistance or provide meaningful access to the United States Supreme Court.

■ The right of access to the courts does not permit recovery for careless or negligent acts. Rather, the evidence must reveal some active misuse of power. *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Pink v. Lester*, 52 F.3d 73, 76 (4th Cir.1995); *Kincaid v. Vail*, 969 F.2d 594, 601–03 (7th Cir.1992).

The facts outlined above do not indicate that either defendant rejected plaintiff's request for library access knowing that his filing deadline expired on February 7, 2006. Rather, they received information suggesting that plaintiff needed to perform research so that he could draft a petition prior to April 6, 2006. They allowed library access on a priority basis prior to the expiration of the perceived (yet incorrect) deadline. Neither defendant shielded information or otherwise engaged in conduct that might reasonably be viewed as a deliberate effort to prevent plaintiff from filing a timely petition for a writ of certiorari. At most, the evidence would support a finding of careless or negligent conduct. The evidence could not support a finding that either defendant actively misused authority to regulate plaintiff's library access. Both defendants are entitled to judgment in their favor on Count 1.

## II. Detriment

Defendants also argue that plaintiff cannot rely on his criminal conviction to prove detriment because his criminal conviction still stands. They rely on *Nance v. Vieregge*, 147 F.3d 589 (7th Cir.1998). Plaintiff responds that he can satisfy the detriment requirement by showing that he was not able to file a timely petition for a writ of certiorari.

This argument is not adequately developed by a discussion of evidence. Accordingly, it is evaluated as a challenge to the sufficiency of plaintiff's allegations. Dismissal is not warranted, as the facts alleged adequately suggest that plaintiff experienced a legal setback as a result of the limited library time. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir.2006).

### Retaliation

Defendants seek summary judgment in their favor on plaintiff's retaliation claim. Plaintiff notes that Count 3 is a free speech claim pertaining to his effort to seek redress of a grievance regarding prison conditions.

Plaintiff's retaliation claims (Counts 2 and 4) are no longer before the Court. These claims were dismissed at threshold review (Doc. No. 47). Because the defendants are challenging dismissed claims, their argument is moot.

### Qualified Immunity

Defendants seek judgment in their favor on the qualified immunity defense. This argument appears to target Count 1. As noted above, the defendants are entitled to judgment in their favor on Count 1. Because there was no constitutional deprivation, the qualified immunity defense is not addressed at this time. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (only if there is an constitutional deprivation can the Court consider whether the official is entitled to qualified immunity).

### Conclusion

IT IS RECOMMENDED that defendant's motion for summary judgment (Doc. No. 41) be GRANTED in part and de-

clared MOOT in part. At the close of this case, judgment should be entered in favor of both defendants on Count 1. If this recommendation is adopted, Count 3 (a free speech claim against defendant Ebbert) will remain for jury trial.

April 21, 2009.